This Honorable Court is now in session. Please come to order. OK, let's see. OK. We've moved the cases around, and this. This is the old number three. Yes, exactly. OK, so Mr. Daley and Mr. Tank, you're counsel. And Mr. Daley, you may proceed. Thank you, Your Honor. This is a case involving negligence. And apparently, the issue of what duty is owed between people who share dangerous equipment requires some clarification. So under the FACTS law and the restatement, that duty should be one of reasonable care. I have reserved five minutes, so I have 10 minutes total. So I thought perhaps maybe my time is best spent by addressing whatever questions the judges may have. OK, I'll start you out. Thank you. Well, Capstone employees and CHEP employees shared access to the skid jacks. But why would the fact that both employees had access to the jacks create a duty running between the employees? Because the equipment, if it malfunctioned, would be dangerous. And that was why the procedures were in place in order to properly remove the equipment from service when it malfunctioned. And that was the procedures that were not followed by CHEP. But how did those facts establish any kind of legally relevant relationship? Sure, Your Honor. If we look at the restatement, Section 388, Comment C, it specifically mentions shared equipment. And I'm going to quote. It says, it applies also to anyone who permits others to use or share in the use of a chattel while it is in his own possession or control. And this particular equipment was still under the control of CHEP when it was left without being properly taken out of service. But why was it CHEP's control as opposed to Dollar General? Looking at the entire thrust of Section 388, it seems to contemplate the relationship between Dollar General and CHEP or Dollar General and Capstone. And I think I have the same question Judge Rovner does about how do we finish the third leg of that triangle. How does the duty that Dollar General has with respect to these loans and so on turn into kind of make CHEP somehow the supplier of this particular piece of equipment? It's simple, Your Honor. There is no record that the skid jack was ever actually delivered to Dollar General. They never received it. And there's a paper trail that should follow it. Can you explain what you mean by that? Because I thought Dollar General owned these things. And do we happen to know how many of them there were in this facility, in this warehouse? That may be in the record. Your Honor, I know that there was about three or four that were being shared between the CHEP and Capstone. But to answer your question, Your Honor, it was still, there was a procedure in place in which if there was a problem with the lift, it was supposed to be red tagged by CHEP. And that's what, and then delivered to Dollar General, who would repair it and then remove the red tag. So in other words, Dollar General imposed this duty. If you're going to use our skid jacks and you notice a problem with one of them, you have to tell us about it. Put this red tag on it. If you can, get it back to the maintenance area. If you can't, alert somebody that it needs to be towed back to that area. That's all fine. And it seems to be something, again, that runs between Dollar General and the user. How does that mean that when you don't put the tag on it, you have now violated a legal duty toward other users? Because that comes to the simple test of foreseeability and the risk of harm. Has any Indiana decision ever imposed a duty in this way that you're now arguing for from general principles? I don't think so, Your Honor. I think that the Dutchman case is more of a direct supplier. And I think what the restatement says is the definition of supplier is very broad and includes shared equipment. So I think under these circumstances, where the risk of harm is substantial, the procedure's in place, that there should be a duty. You know, you admit that the first consideration when assessing foreseeability is, of course, the relationship between the parties. And as you note in your brief, chef employees and capstone employees like Seekins are at best co-borrowers of Dollar General's skidjacks. So have you found any cases recognizing such a relationship as creating a duty? Well, I think, Your Honor, that's one of the imports of this case where we're dealing with increasing a shared economy where things are being shared, that the restatement does cover that. And the restatement, again, specifically addresses shared equipment. To answer your question directly, Your Honor, there are no Indiana cases, which is one of the reasons I suggested if the court is concerned about that, that maybe perhaps it's best to refer it to the Indiana Supreme Court. But, you know, my view- And if we were inclined to certify a question, what exactly do you think the question should be? Do you- Sure. Basically, what duty is on between shares of equipment? I think that's- Let me spell this out a little bit more because this is obviously a diversity case. You started out, as I understand, in the state courts. So you selected a very good forum for a case where the law is maybe in the process of development. But as was their right, the defendants removed to the federal court. Under Erie, of course, the federal court is supposed to look to Indiana law, in this instance. I don't think anybody's arguing for any different law, to see whether there's a right to recover, et cetera. Certainly, Indiana law would govern such things as duty. But the federal courts have their hands tied. The federal courts can't make changes in Indiana law. Only the Indiana courts can do that. So it seems to me, if you want to make this a case about duties that are owed in a workplace owned by party A, where subcontractor X and subcontractor Y are both using the facilities, maybe they're using the drinking water, maybe they're using skid jacks, maybe they're using other shared equipment, one can imagine any number of things, that may be a general question that is showing up in many workplaces around the country. I would expect, though, that you would have pointed us, perhaps, to cases from other jurisdictions resolving this problem, if it's really that big an issue. Well, I think it's relatively, it depends on how broadly one considers the restatement and comment C and comment L about warnings given to third persons. But to your point, Your Honor, I did not find any cases and the district court did not find any cases. And I think that's- From either Indiana or any other state in the United States? Apparently not, Your Honor. Doesn't that hurt your position? I mean, I can understand the equities of your position, but if the law doesn't impose a duty, that directs people's behavior. It would certainly have a lot to do with the safeguards that the co-borrowers would put into place with monitoring. If they don't have any notice that they have a duty toward one another, we have a problem. Well, Your Honor, I think a couple of things, but one of the things is the newness of what I'm kind of calling the sharing economy. The second part is, you know, when there's an issue of how, whether a duty exists and Indiana law has provided us with the elements of how that's determined, if there's a relatively novel type case. And I think we meet all of those criteria without any real problem. So your best argument is that this is an old framework and we're just applying it to new facts. I think so, Your Honor. I think what you can see in the restatement is better than Indiana law, because I think that restatement is more of a survey of the law and the procedures. But so the restatement talks about weighing the likelihood of harm and the magnitude of harm, and that creates the duty. So that's in comment L. And then comment C just says, the supplier language is very broad and applies to all kinds of bailers, irrespective of whether the bailment's for reward or gratuitous, and irrespective of whether the bailment is for use transportation safekeeping or repair. So I think- Is there anything in this record that would allow you to think that Dollar General, in a sense, created a bailment with the first user, with CHEP, and then CHEP is creating some kind of, this seems to me far-fetched, but I'm trying to figure out your argument. So your question specifically, is there like a double bailment type thing? Well, right, I'm trying to get to the point that CHEP is actually the supplier vis-a-vis Capstone, because if we can't get there, then we don't have a way of making it liable. Well, Your Honor, there is no question the equipment is shared between Capstone and CHEP. They share the equipment. When there's a problem, then, I think of it in terms of a chain of custody. So if you think in terms of who has it, who has control, it's CHEP, until they fill out the form and properly give it to Dollar General for repair. And that's what they did not do. And it was certainly foreseeable that my client would use that because they shared it on a daily basis. Can I ask you about a different aspect of this case? Isn't the record very vague about whether SJ-4, the one that malfunctioned for Mr. Seekins, was a unit that had ever had any problems? We have a lot of speculation about somebody who had problems with one, but unless you think that there's some reason to think that only one skipjack could have a problem, I'm concerned about that aspect too. Your Honor, I took the trouble to lay out all of the circumstantial evidence that supported the fact that this was SJ-4 that had this particular problem. And there's testimony from CHEP's superintendent that they had the problem with the skid steer the night before. There were only two employees that could have been involved. We deposed one employee, so it wasn't us. The superintendent directed him, Mr. Brown, to take it to get it repaired. And there's no record that he ever did it or did anything to take it out of service. And then, Mr. Brown, after the accident occurred, we have the testimony, middle of hearsay testimony, but we believe there's exceptions, that that was the exact unit. So we certainly have enough circumstantial evidence at the summary judgment stage, we think, to address that particular issue. And bottom line, your argument is that by using dollar general skid steer, CHEP undertook the goal of ensuring their safety for all other users. Well, I think that's a tough framing here. My argument is once they had it, they had to make sure it was properly removed from service so nobody else got hurt. Liability follows control is my argument, yeah. I think I might be over my time. You're in your rebuttal time if you want to wait. Okay, thank you, please. Mr. Tank. Thank you, Your Honor, and may it please the court. Mr. Seekin's claim rests on an incorrect interpretation of the plain language of section 388 of the restatement and its comments. Under that plain language, CHEP owed no duty to prevent Mr. Seekin's injuries. Without a legal duty. Forgive me, but does it really matter whether it is dollar general or CHEP who, you know, quote, supplies the skid jack when there is evidence that the last person to use it may have been aware that it was defective? Under section 388, establishing that CHEP is a supplier is a condition precedent to establishing that it owed Mr. Seekin's a duty of care. And so under that theory, which is the only theory that was advanced in the district court, Mr. Seekin's must establish that CHEP was a supplier. Now, even if CHEP was a supplier, I'd like to address the second part of your question, which is that CHEP was the last user of the skid jack. Of that contention, there is no evidence. We have hearsay statements by Mr. Brown made before the day of the accident. Excuse me, the day before the accident that there may have been a problem with a skid jack. We explain in our brief why we believe those statements are inadmissible. But to address whether CHEP was the last user of the SJ-4, even assuming Mr. Brown did make that statement, Mr. Seekin's did not actually start using the SJ-4 until the following day. And there is no evidence in the record of what happened to the SJ-4 and who may have used it between Mr. Brown and Mr. Seekin's. And so even if you interpret section 388 and its discussion of a supplier to broadly encompass anyone who may have used the SJ-4 before Mr. Seekin's, that creates an additional problem for his case, which is creating a question- At this stage of the proceedings, we're obviously obligated to construe the facts in Seekin's favor. And under that standard, Seekin's evidence that a CHEP employee knew the skid jack jack was defective and failed to red tag the jack and take it out of circulation would certainly seem to be the proximate cause of Seekin's injury. Your Honor, I disagree with that contention. And before I go into why I believe Mr. Brown's statements about the skid jack are inadmissible, I first want to address the issue with the red tagging. That alleged procedure or that procedure that CHEP is alleged to be required to follow does not impose a legal duty on it for Mr. Seekin's benefit. It's well-established that internal policies and procedures, including those imposed by outside parties like Dollar General, do not create a legal duty on users of equipment like CHEP. They only go to whether CHEP would have breached any duty it may have owed Mr. Seekin's. So in this case, even if Mr. Brown did have the SJ-4 and even if he did take it to the maintenance department but failed to or forgot to put a red tag on the equipment, that does not establish that CHEP owed Mr. Seekin's a legal duty. It only establishes that it may have breached a duty if it owed it, which we do not need to reach, a question we don't need to reach because there is no evidence that CHEP owed Mr. Seekin's a legal duty. And I'd like to go back to the issue of supplier because I believe that is really central to the issues of this case. It is central, but as you address it, I would like you also, let's say somehow, to take into account the fact that it's a common business form today for functions to be performed not by employees but by various subcontractors that are legally and practically distinct. And that's what we have here. We have a subcontractor that deals with the warehouse and we have a subcontractor that unloads trucks. For all I know, there's a subcontractor that cleans the place. I mean, they're likely to be a number of subcontractors and to be able to just have a circular finger-pointing squad saying, well, we're not responsible for the machine, we're not responsible for the machine seems to leave a gap that the restatement itself doesn't contemplate. Your Honor, I agree with Plano's counsel, Mr. Seekin's counsel, that the sharing economy is new, but I disagree that it is new for employees of separate companies to work together side-by-side under one roof. It has been a common practice going back decades, if not centuries, for employees of separate companies to work side-by-side. So this is an old issue. And traditionally- But usually that gets solved in the traditional case by the joint employment doctrine. Are you a joint employee of the general contractor and the subcontractor or something along those lines? This, I'm not familiar with horizontal relationships. The way that issue could be resolved is through contractual relationships. And Dollar General, through its contracts with CHEP and with Cornerstone, imposing legal obligations on them through contractual obligations that, for example, would have required CHEP and its employees to inspect and maintain the skid jacks, not only for their own use, but also for the benefit of others who may use the skid jacks after them. There was no such- No, you go ahead, I'm sorry. I was simply going to end by saying there were no such contractual obligations on CHEP in this case. Did you attempt to add Dollar General to the suit as an indispensable part? Your Honor, I believe they were identified under Indiana law. However, before this lawsuit was filed, Mr. Seekins pursued a claim against Dollar General as well. That case was also dismissed at summary judgment and it was settled before it was heard in this court. And so for that reason, the finding that Dollar General did not owe a duty and then that issue being resolved through settlement before the Seventh Circuit had a chance to decide whether summary judgment was properly entered, meant that it was not added as a direct party in this case. However, we do note in our brief that Dollar General's conduct or lack of appropriate conduct further warrants summary judgment for CHEP because it shows that its failure to maintain the skid jack before putting it back on the warehouse floor for Mr. Seekins' use is an intervening cause that cuts off causation of any allegedly negligent conduct by CHEP. So assuming Mr. Seekins' theory of the case to be true, that Mr. Brown believed there was an issue with the skid jack and took it to Dollar General's maintenance department. The evidence in this case shows that it was the general practice of Dollar General's maintenance employees to inspect all equipment and take it on a test drive to see if there's an issue, regardless of whether there's a red tag on the equipment. And they would only release the equipment back into service if they found there were no issues in this. So assuming Mr. Seekins' theory of the case to be true, it means Mr. Brown took the equipment to Dollar General and they released it back onto the floor without fixing the problem. Could I just ask you, do we know where? All I saw was that Mr. Seekins on May 16, quote, claimed this skid jack and went through the 12-point inspection and so forth. Did he go to the maintenance department? Was it sitting out there on the floor somewhere? Where did he find it? All we know is that it was on the floor. We don't know where it was found in relation to the maintenance department. Okay. But the inference from the only evidence that exists is that it was on the floor intended for use by other people and not in a secured area in the maintenance department where it would be understood that it should not be used by people like Mr. Seekins. You know, you quote the record in your brief for the proposition that Chet attempted unsuccessfully to take the skid jack for repair. And that's precisely what Seekins' claim resulted in Chet assuming a duty of care, isn't it? Your Honor, under Indiana law, simply taking the skid jack for repair would not constitute a voluntary assumption of a duty of care. So under Indiana law, in order to voluntarily assume a duty, someone needs direct affirmative conduct, meaning they actively try to do something. Or if it's non-feasance, which is what Mr. Seekins is alleging in this case, that Chet's employee failed to do that, then Mr. Seekins must further show detrimental reliance by Mr. Seekins on the expectation that Chet would have acted a certain way. In the case we cite on our brief that is most on point in terms of the voluntary assumption argument is the case in which a group of people were drinking in a home, someone had become intoxicated, their friends tried unsuccessfully to take the keys away from that person before they left the house, and then they got in their vehicle and they caused an accident. No voluntary assumption of duty was found by the Indiana courts in that case because their attempt to take the keys, although it failed, did not indicate an affirmative action by the friends of the individual involved in the accident to assume a duty. And therefore, for that reason, no duty was found. The facts in this case are analogous to the facts in those case. Again, assuming Mr. Seekins theory to be true, that Mr. Brown took the Skid Jack to Dollar General's maintenance departments, that was not the type of affirmative conduct that would impose a legal duty on Chet to act for the care of Mr. Seekins. If Chet owes no duty of care to the next user, but is also the only party who is aware of his defective, how can a plaintiff injured by the equipment recover? I mean, because in that scenario, Chet would owe no duty, but if Dollar General owed a duty, it would still take liability because the plaintiff would not be able to prove causation as to Dollar General. I mean, does that seem like the right outcome to you? It does, Your Honor, because the Indiana legislature has addressed that gap through the workers' compensation scheme. And because Mr. Seekins was injured while he was at work, he is still entitled to recovery for his medical bills and lost wages under that statutory scheme. The simple fact that an accident occurred does not necessarily entitle someone to recovery from a third party. And that is the situation we have here. Mr. Seekins' accident was obviously unfortunate. He was injured badly, but that does not automatically entitle him to recover money from third parties who did not owe him a legal duty of care to act for his benefits. And that is the situation we have here. He was able to recover from workers' compensation, but he is not entitled to a recovery from Chet. There was one issue that I wanted to address if there are no further questions at this time, and that is the issue of the comments to Section 388 and their description of who may be a supplier under the restatements. I want to address the fact that that list is exhaustive and not merely inclusive, because I think that is central to determining that Chet did not owe Mr. Seekins a duty of care. In that comment, there is no expressed language in the comment stating that the list is only inclusive, such as for example, or including but not limited to. Reading that list is exhaustive is a reasonable interpretation because the list covers a broad range of actions that constitute nearly all of the scenarios in which one could be a supplier of chattel. Finding the list is non-exhaustive would result in situations like this, where Section 388 is being interpreted in a way that's inconsistent with its intended purpose. Can I just throw in that again, I mean, look, I'm a big fan of the restatements. I have huge respect for the ALI, but we need to see how the Indiana Supreme Court uses perhaps the restatement as a whole, perhaps Section 388 in particular, because if it's taking a broad, purpose-oriented approach to that language, then that might guide us in the direction of saying that if A gives something to B, or if A leaves something out there knowing B is going to use it, A is a supplier, even if they happen to be co-subcontractors or if the Indiana Supreme Court takes a different approach. I want to tie this back to the way we're supposed to approach this law. I'll quickly respond by saying that even if you broadly interpret Section 388 to find the co-users, and my time's running out, is it okay if I have a few extra seconds? Please finish the answer, yes. Even if you interpret 388 to broadly include co-users, you would have to cut off that liability at some point to make it reasonable so that someone who used it a month ago could not be considered a user. In this case, even if you cut off the liability at the last person who used the SJ-4 before Mr. Seekins, there is no evidence that last person was checked. All we know is that he used the SJ-4 the day before the accident. And therefore, there is no reason to find that the legal duty was owed, even just by someone who happened to use the SJ-4 as the last person before the person who was injured. And for those reasons, thank you for your time. We ask that you affirm summary judgment for Jeff. Thank you, counsel. Thanks to both counsel. And the case will be taken. Mr. Daly, do you have any time left? I do, your honor. I have a one minute and 46 seconds, which should be ample if I may. All right, go ahead. Okay. Again, I'm gonna refer to comment C of 388. And it says, quote, it applies also to anyone who permits others to use or share in the use of a chattel while it is in his own possession or control. And again, the reason it's still in their control is because they didn't fall, CHEP did not follow the procedure, the chain of custody procedure that's included in the red tag procedure. So I think it is covered under there. And again, if we wanna look at it, the restatement is not per se the law, but the law in Indiana is they look at those three factors, which the district court did not do. And if we look at those three factors, as the court pointed out, the case against Dollar General was dismissed because I could not prove they ever received it. And so now I've got the situation where I have evidence that it never was properly handed off to Dollar General by CHEP. And that's our case against them. I have any questions I may have to answer? I don't believe so. Thank you. Now, thanks to both counsel.